IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE SIX FLAGS ENTERTAINMENT CORPORATION DERIVATIVE LITIGATION § § § § | Civil Action No: 4:20-cv-00262-P |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss ("Motion" or "MTD"). ECF No. 46. Having considered the Motion, Plaintiffs' Response (ECF No. 48), Defendant's Reply (ECF No. 49), the record, and applicable law, the Court finds that the Motion should be and hereby is **GRANTED** and that Plaintiffs' claims are **DISMISSED with prejudice.**

## BACKGROUND[1]

### A.    Factual Background

Defendant Six Flags is a Delaware corporation headquartered in Arlington, Texas. Six Flags is the largest regional theme park operator in the world, and all twenty-six of Six Flags's theme parks are in North America. Am. Comp. at ¶ 2. In 2014, Six Flags announced a partnership with Riverside Investment Group Co. Ltd. ("Riverside"), through which Riverside planned to build Six Flags-branded theme parks in China. *Id*. at ¶¶ 4–5. In 2018, Six Flags and Riverside announced plans for additional branded parks across China. *Id*. at ¶¶ 6, 8.

---

[1]The Court draws its factual account from the allegations in Plaintiffs' First Amended Complaint (ECF No. 45). *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

While Six Flags was optimistic about international expansion in China, it also cautioned investors of the specific risk that international expansion objectives may not play out as planned. For example, on February 20, 2018, in its annual report for 2017, Six Flags warned that it "may not be able to realize the benefits of [its] international licensing agreements" in light of, among other risks, "the performance of our partners and their ability to obtain financing." MTD Appx at 51–52, ECF No. 47.

Ultimately, this risk moved from possibility to reality. In February 2019, Six Flags announced a negative revenue adjustment of $15 million in Q4 2018 and attributed it to delays in the expected opening dates of certain of Six Flags's Chinese parks. Am. Comp. at ¶ 12. In its disclosures, Six Flags explained that these delays were due to certain conditions in China negatively impacting their partner, Riverside, including lower gross domestic product growth, new government policies making it more difficult for Riverside—a real estate developer—to liquidate real estate assets or obtain loans, and turnover of government officials requiring re-approval of previously approved plans. *Id*. at ¶ 65. Six Flags also disclosed that, as a result of these conditions, it had "performed a comprehensive review of [its] project timelines jointly with [its] partner," and that Six Flags expected delayed openings for certain parks in China. *Id.*

According to the Amended Complaint, this resulted in a stock price drop from $63.87 per share to $54.87 between February 13 and 14, 2019. *Id* at ¶ 13. Other similar issues arose, leading to disclosure of further delays and consequent stock price drops from $51.23 to $44.88 between October 22 and 23, 2019, and from $43.76 to $35.96 between

January 9 to 10, 2020. *Id*. at ¶¶ 14–17; *see also* MTD Appx at 65, 89, 120 (detailing some of the disclosures in question).

The January 10, 2020 disclosure included the fact that Riverside "continued to face significant challenges due to the macroeconomic environment in China," causing Riverside to default on its payment obligations to Six Flags. Am. Comp. at ¶ 16. Six Flags further disclosed that it would not realize revenue from its agreements with Riverside in Q4 2019 and that it expected a negative $1 million revenue adjustment and aggregate charges of approximately $10 million "related to the China international agreements and certain unrelated litigation matters." *Id.* at ¶¶ 16, 18. Six Flags warned that the outcome of its expansion into China was "unknown" and could range from "continuation of one or more projects to the termination of all the Six Flags-branded projects in China." *Id.* at ¶ 86. On February 20, 2020, the latter came to pass when Six Flags announced that it terminated its licensing agreements with Riverside. *Id*. at ¶ 18.

**B.   Procedural Background**

In March and April 2020, Plaintiffs filed three substantially identical putative derivative actions filed in this Court. In each case, Plaintiffs did not make a pre-suit demand on the Six Flags Board of Directors ("the Board") to initiate litigation on behalf of Six Flags, claiming demand futility. In May 2020, the Court granted Plaintiffs' motion to consolidate the three derivative actions and appointed lead counsel.[2] ECF No. 27.

---

[2]Plaintiffs, as consolidated in the order granting their motion to consolidate, were originally plaintiffs in the following suits:
- 4:20-cv-00262-P: Mark Schwartz, Derivatively on Behalf of Six Flags Entertainment Corporation;

Plaintiffs allege that certain Six Flags's directors and officers breached their fiduciary duties, improperly traded Six Flags shares on nonpublic information, wasted corporate assets, and unjustly enriched themselves. Am. Comp. at ¶¶ 140–170. Additionally, Plaintiffs seek contribution under sections 10(b) and 21D from the Officer Defendants on behalf of Six Flags for potential liability in a related Securities Action. *Id*. at ¶¶ 171–75. Six Flags filed this Motion, Plaintiffs responded, Six Flags replied, and the Motion is now ripe for consideration.

## LEGAL STANDARD

Given that Six Flags is a Delaware Corporation, Delaware law controls the demand futility analysis in this derivative action at this stage of the proceedings. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991). "[T]he purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interests of the

---

- 4:20-cv-00311-P: Deborah Martin as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; William Harpel as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; William Blumerich as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; Geoff Donaldson as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; Karen Farr as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; Karry Hepting as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; William Oldford as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; Jorja Baldwin as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; James Spadafore as Trustees of the St. Clair County Employees Retirement System, Derivatively on Behalf of Six Flags Entertainment Corporation; and

- 4:20-cv-312-00312-P: Mehmet Ali Albayrak, Derivatively on Behalf of Six Flags Entertainment Corporation.

corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen*, 500 U.S. at 95. That said, derivative claims belong to the company, not the shareholders. *Id.* at 108; *see also Guitierrez v. Logan*, No. H-02-1812, 2005 WL 2121554, at *3 (S.D. Tex. Aug. 31, 2005). Thus, shareholders must first make a demand of the board of directors so that the board can authorize the suit on the company's behalf under Rule 23.1. *See Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991) *overruled on other grounds in Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). The demand requirement is more than a mere formality; it is an "important stricture of substantive law." *Id.* at 207.

Rule 23.1 mandates that plaintiffs who do not make a demand before bringing derivative litigation "*state with particularity* . . . the reasons for . . . not making the effort" in their complaint. FED. R. CIV. 23.1(b)(3) (emphasis added). This standard protects the business judgment rule's presumption that the board will evaluate whether (and when) to commence litigation "on an informed basis, in good faith and in the honest belief that the action taken [will be] in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). The rationale behind this requirement is "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Levine v. Smith*, No. 8833, 1989 WL 150784, at *5 (Del. Ch. Nov. 27, 1989).

If a derivative claim fails to challenge a particular board action, plaintiffs must plead "particularized factual allegations . . . creat[ing] a reasonable doubt" that at least half of the board was capable of "properly exercis[ing] its independent and disinterested business judgment" in response to a demand. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

This demand futility standard applies to the board as it existed when the Complaint was filed. *Brehm*, 746 A.2d at 257.

Generally, a court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## PLAINTIFFS FAIL TO PLEAD DEMAND FUTILITY

On March 20, 2020—the date that the first derivative complaint was filed in this case—the following nine persons were members of the Board: Ben Baldanza, Selim Bassoul, Kurt Cellar, Nancy Krejsa, Jon Luther, Stephen Owens, Michael Spanos, Richard Roedel, and Arik Ruchim. MTD Appx at 146. Plaintiffs concede that Baldanza and Bassoul could consider a demand with disinterest. *See* Comp. ¶¶ 119–38, ECF No. 1. To survive dismissal, Plaintiffs must allege with particularity that five of the remaining seven directors were incapable of considering a demand impartially.

**A.    Failure to Allege Substantial Likelihood of Liability**

Plaintiffs' first theory of demand futility is that Defendants Roedel, Cellar, Krejsa, Luther, and Owens could not have impartially considered a demand because Plaintiffs claim that these individuals face a substantial threat of personal liability. Am. Comp. at ¶

6

122. A "mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815. Thus, merely naming a director as a defendant in a derivative complaint is insufficient. *Id.* at 817. Instead, a director is conflicted on this basis "only in the rare case when a plaintiff is able to show director conduct . . . *so egregious on its face that . . . a substantial* likelihood of director liability . . . exists." *In re Citigroup S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) (emphasis added); *see also McElrath v. Kalanick*, 224 A.3d 982, 991 (Del. 2020). To establish demand futility on this basis, "a derivative complaint must plead facts *specific to each director.*" *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original) (citing *Beam v. Stewart*, 845 A.2d 1040, 1050–51 (Del. 2004); *Freuler v. Parker*, 803 F. Supp. 2d 630, 648 (S.D. Tex. 2011) (collecting cases); *Citigroup*, 964 A.2d at 121 n.36 (rejecting "group accusation mode of pleading demand futility").

It is also worth noting that Six Flags's Certificate of Incorporation contains an exculpatory clause shielding directors from monetary liability arising from fiduciary duty of care violations under § 102(b)(7) of the Delaware General Corporation Law, *see* MTD Appx at 13, where "the bar for establishing a substantial likelihood of personal liability is much higher." *Van der Gracht de Rommerswael on Behalf of Rent-A-Ctr., Inc. v. Speese*, No. 4:17-CV-227-ALM-CMC, 2017 WL 9280071, at *20 (E.D. Tex. Aug. 11, 2017), *report and recommendation adopted sub nom. Arnaud van der Gracht de Rommerswael on Behalf of Rent-A-Ctr., Inc. v. Speese,* No. 4:17-CV-227, 2017 WL 4545929 (E.D. Tex. Oct. 12, 2017). Thus, to plead demand futility, "plaintiffs must plead particularized factual

allegations supporting the inference that the alleged violation was made in bad faith, knowingly or intentionally." *Id*.

Plaintiffs claim Roedel, Cellar, Krejsa, Luther, and Owens face a substantial likelihood of liability arising from alleged "fail[ures] in their [fiduciary] oversight responsibilities." Am. Comp. at ¶ 122. They further claim that these individuals failed in their "oversight responsibilities" by (1) allowing the alleged false and misstatements to be made, (2) permitting Six Flags to "waste corporate assets by repurchasing its own stock," and (3) failing to implement, maintain, and monitor appropriate internal controls over Six Flags's public statements and over insider and Six Flags transactions in Six Flags stock. *Id*.

Plaintiffs' theory of wrongdoing is that Defendants failed in exercising their oversight duties. This is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Intern. Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To establish demand futility under *Caremark*, plaintiffs must put forth particularized allegations sufficient to demonstrate that the Board either (1) utterly failed "to adopt internal information and reporting systems" or (2) "consciously failed to act after learning about evidence of illegality—the proverbial red flag." *South v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012). Such failures must be "sustained or systemic." *Caremark*, 698 A.2d at 971. Indeed, "[p]leading oversight liability under *Caremark* requires allegations of conscious bad faith." *Behrmann*, 2020 WL 4432536, at *12 (citing *Citigroup*, 964 A.2d at 123). Plaintiffs fail to clear this high hurdle.

1. <u>Six Flags had Internal Information and Reporting Systems.</u>

If the Board had "in place a reasonable board-level system of monitoring and reporting, deference is given to the board and *Caremark* claims are dismissed even when illegal or harmful company activities escaped detection." *Behrmann*, 2020 WL 4432536, at *12. "A pleading that concedes the existence of board-level systems of monitoring and oversight . . . generally fails to pass muster under the first prong of *Caremark*." *Id.* That is the case here.

Plaintiffs concede that the Board had an Audit Committee with a governing charter directing the Audit Committee to meet quarterly; to work with auditors and accountants; to review, *inter alia*, annual and quarterly financial statements, earnings press releases, and guidance; and to make regular reports to the Board. Am. Comp. at ¶¶ 105–06; MTD Appx at 21–28 (appending a copy of Six Flags's Audit Committee Charter). Moreover, Six Flags had a Code of Business Conduct and Ethics, including an insider trading policy and Corporate Governance Guidelines. Am. Comp. at ¶¶ 98–103. These internal oversight systems foreclose any attempt to establish a substantial likelihood of liability under *Caremark*'s first prong. *See, e.g.*, *Behrmann*, 2020 WL 4432536, at *12; *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006); *Caremark*, 698 A.2d at 963.

2. <u>Failure to Adequately Allege Conscious Failure to Act</u>

Plaintiffs also fail to allege facts specific to any defendant showing that any director "consciously failed to act after learning about evidence of illegality." *Baker*, 62 A.3d at 15. Stockholders "cannot displace the board's authority over the corporation's claims simply by describing the calamity and alleging that it occurred on the directors' watch." *Id.* at 14.

Delaware courts require plaintiffs to plead with particularity that each Defendant was "specifically aware" of evidence of illegality and consciously failed to act. *Behrmann*, 2020 WL 4432536, at *12. "[B]ad faith is a *necessary* condition to director oversight liability." *Speese*, 2017 WL 9280071, at *16 (emphasis original).

Plaintiffs fail to include any particularized director-specific allegations whatsoever. A plaintiff must plead with particularity the reasons for excusing demand as to each director individually. *Livermore v. Engles*, No. 3-10-CV-0882-BD, 2010 WL 3583999, at *3 (N.D. Tex. Sept. 13, 2010); *Freuler*, 803 F. Supp. 2d at 648. Conclusory allegations that a majority of directors "reviewed and approved," "caused," or "allowed" the alleged misstatements are owed no deference and fail to establish demand futility. *Ellis*, 2018 WL 3360816, at *10. Here, Plaintiffs do not offer *any* allegations specific to any Director Defendant. Such a failure forecloses any finding of a substantial likelihood of liability, which is required to find demand futility. *Stone*, 911 A.2d at 372.

Merely noting that Roedel, Cellar, and Owens were members of the Audit Committee and repeating the functions of the Audit Committee, Am. Comp. at ¶ 124, does not constitute the particularized pleading required to allege demand futility. "As numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem." *Baker*, 62 A.3d at 17.

Instead, Plaintiffs needed to allege with particularity that the directors were "actually involved in creating or approving the statements" and "made [such] disclosures

10

with knowledge that they were false or misleading or in bad faith." *Citigroup*, 964 A.2d at 133 n.88. Plaintiffs do not plead with particularity that the Audit Committee members created or approved the challenged statements, actually knew any statement was false or misleading, or otherwise acted in bad faith, as required to plead adequately a non-exculpated claim that may excuse demand.

Further, Plaintiffs failed to allege any actual "red flags" regarding Riverside's financial condition or the Six Flags-branded parks in China. Importantly, alleging potential "business risks" does not constitute a red flag for demand futility purposes. *Citigroup*, 964 A.2d at 123–24. Here, Plaintiffs do not allege *any* specific information known to the Defendants that could have indicated that public statements concerning Riverside or the Six Flags-branded parks in China were false when made. In their Complaint, Plaintiffs cite website postings and news coverage of Riverside's alleged difficulties in December 2019 and January 2020, Am. Comp. ¶¶ 81–83, but fail to allege that any Defendant had knowledge of these items, as required to plead demand futility. *See, e.g., Staehr*, 2010 WL 11030716, at *10 n.9 (alleged "red flag" insufficient absent well-pleaded allegation that "the board of directors had actual knowledge of this warning letter").

Moreover, these website postings and news coverage were issued in December 2019 and January 2020, months after Six Flags disclosed that "the Chinese market remains difficult," "we are likely to continue to recognize lumpy international agreements," and that "there's a very high likelihood going forward that we will see changes in the timing of park openings," Am. Comp. at ¶ 76, and contemporaneously with Six Flags's January 10,

11

2020 disclosure informing the market that Riverside "continues to face severe challenges," *id*. at ¶ 86, and that formal notices of default had been issued. *Id*. at ¶ 16

Sufficient allegations of knowledge of a red flag are a necessary predicate to any claim that the director Defendants breached their fiduciary duties by "allowing the [alleged] false and misleading statements provided to the investing public," "permitting the Company to waste corporate assets by repurchasing its own stock at prices artificially inflated by Defendants' misconduct," or failing to "monitor appropriate internal controls" concerning the Company's public statements and transactions in Company stock. Am. Comp. at ¶ 122. Absent any well-pleaded red flags, Plaintiffs cannot state a *Caremark* claim with the requisite particularity that Roedel, Cellar, Krejsa, Luther, and Owens face a substantial likelihood of liability arising from a non-exculpated *Caremark* claim. *See Montini v. Lawler*, Nos. 12-11296-DJC, 12-11399-DJC, 2014 WL 1271696, at *9–11 (D. Mass. Mar. 26, 2014) (applying Delaware law, finding plaintiffs failed to plead a substantial likelihood of personal liability arising from *Caremark* claims and related disclosure and stock repurchase claims because there were "no particularized allegations asserting that a majority of directors" knew of the underlying wrongdoing).

**B.     Professional Relationships Do Not Excuse Demand.**

Plaintiffs' allegations that Directors Roedel, Krejsa, Luther, and Ruchim cannot independently consider a demand because of certain supposed professional relationships, Am. Comp. at ¶¶ 125–34, also fail. To show that a director lacks independence based on personal or professional relationships, plaintiffs must allege "with particularity facts indicating that a relationship . . . is so close that the director's independence may reasonably

12

be doubted." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004); *Freuler*, 803 F. Supp. 2d at 637. The "naked assertion of a previous business relationship is not enough to overcome the presumption of a director's independence. The law in Delaware is well-settled on this point." *Orman v. Cullman*, 794 A.2d 5, 27 (Del. Ch. 2002); *Freuler*, 803 F. Supp. 2d at 646 n.24 ("Delaware courts have made clear that a plaintiff showing that demand would be futile must do more tha[n] conclusorily assert entangling alliances."). As such, allegations that directors "moved in the same business and social circles, or a characterization that they are close friends," are insufficient. *Beam*, 845 A.2d at 1051-52; *Freuler*, 803 F. Supp. 2d at 646 n.24. Finally, Plaintiffs must allege adequately that the relationship is "bias-producing"—that is, the relationship must be with someone that is conflicted about the demand. *Beam*, 845 A.2d at 1051–52; *Rales*, 634 A.2d at 936. Here, Plaintiffs' string of connections between a few directors is insufficient.

    1. <u>Relationships with Reid-Anderson</u>

Plaintiffs' assertion that Roedel and Krejsa are conflicted because they overlapped with Defendant and Six Flags's former chairman, president, and CEO Reid-Anderson at Dade Behring and its successors many years ago (Am. Comp. at ¶¶ 32, 126–29) is the precisely the sort of prior business affiliation that does not "impede independent decision making." *Freuler*, 803 F. Supp. 2d at 646 n.24 (citing *Beam*, 845 A.2d at 1050–52). Plaintiffs merely list the resumes of Reid-Anderson, Krejsa, and Roedel, and note that at times, these three overlapped at Dade Behring or its successor. *See* Am. Comp. at ¶¶ 126–28. Similarly, Plaintiffs allege the dates when Reid-Anderson and Krejsa joined Six Flags,

13

without alleging any basis to infer that the timing of their hiring creates a conflict that would render Krejsa incapable of considering a demand. *Id*. at ¶ 129. These bare-bones allegations are simply insufficient to overcome the presumption that Roedel and Krejsa are capable of independent decision-making. *See Midwestern Teamsters Pension Trust Fund v. Baker Hughes, Inc*., No. H-08-1809, 2009 WL 6799492, at *10 (S.D. Tex. May 7, 2009) ("[Doing] no more than list[ing] the various business and social affiliations [of] current Board members . . . is insufficient to establish that the Board members are not disinterested.") (citing *In re Walt Disney Co. Deriv. Litig*., 731 A.2d 342, 355 (Del. Ch. 1998)); *see also In re Synchronoss Techs., Inc. Sec. Litig*., No. 17-7173 (FLW)(LHG), 2019 WL 8231037, at *11 (D.N.J. Nov. 26, 2019) (holding a relationship between co-founders of the nominal defendant company insufficient to show lack of independence); *In re KKR Fin. Holdings LLC S'holder Litig*., 101 A.3d 980, 997 (Del. Ch. 2014) (working at same firm for 18 years insufficient); *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 980-81 (Del. Ch. 2000) (holding a "long-standing 15-year professional and personal relationship" insufficient).

    2. <u>Relationships with Nabi</u>

Plaintiffs next claim that Ruchim, Luther, and Roedel are conflicted in light of alleged professional relationships with Defendant and former Board member Nabi, Am. Comp. at ¶¶ 39, 125, 130–34, but fail to plead any relationship sufficient to create a conflict, or that Nabi himself was interested in the subject of the demand. Again, merely describing professional affiliations is insufficient to plead that demand would have been futile. *See, e.g.*, *Freuler*, 803 F. Supp. 2d at 646 n.24. Here, Plaintiffs allege that Nabi and Ruchim

14

overlapped at the investment firm H Partners until Nabi left in March 2018; that Luther and Ruchim serve on Tempur Sealy's board, a company in which H Partners owns stock; and that Roedel served on the board of one of Tempur Sealy's predecessors. Am Comp. at ¶¶ 131–32. But Plaintiffs do not allege any facts suggesting that these relationships rise to the level required to overcome the presumption that Six Flags's directors were capable of independent decision making.

Even if certain directors are beholden to Nabi by virtue of these tenuous affiliations, there is no well-pleaded allegation that Nabi himself is interested in the demand in this case. Allegations of close relationships on their own are insufficient; instead, plaintiffs must sufficiently plead that the director is "beholden to an interested director." *Beam*, 845 A.2d at 1050; *Guitierrez*, 2005 WL 2121554, at *12. Here, Plaintiffs do not claim that Nabi faces a substantial likelihood of personal liability. Am. Comp. ¶¶ 122–24. Thus, applying the above rationale, Plaintiffs cannot argue that Nabi faces a substantial likelihood of liability to the requisite standard.

The only allegation specific to Nabi is the suggestion that he may be conflicted because, as Chairman of the Board in 2010, he complimented Reid-Anderson when announcing that Reid-Anderson had been appointed as CEO. *Id.* at ¶ 130. Mere pleasantries about an incoming CEO do not plausibly indicate that a decade later, Nabi was beholden to Reid-Anderson. *See e.g.*, *Beam*, 845 A.2d at 1051 (finding insufficient that directors "described each other as 'friends'"). Thus, because Nabi himself was uninterested in the demand, any alleged affiliations with him cannot excuse it.

## C.      Spanos's Employment at Six Flags

Plaintiffs' allegations that Spanos cannot independently consider demand because he is not independent under the NYSE listing rules by virtue of his Six Flags employment are incorrect. Am. Comp. at ¶¶ 119–21. Whether a director is independent under the NYSE listing rules does not control whether that director can impartially consider a demand. *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015). For demand futility, a director is compromised only where plaintiffs plead particularized facts establishing that the director cannot properly exercise their disinterested business judgment in response to a demand. *Freuler*, 803 F. Supp. 2d at 637.

Here, Plaintiffs allege that the only reason Spanos would be considered dependent under the NYSE rules is because he is Six Flags's current president and CEO, and similarly argue that "Spanos is not independent because his principal professional occupation is his employment with Six Flags." Am. Comp. at ¶¶ 119–20. This alone is insufficient to conclude that Spanos would be incapable of considering a demand, as "employ[ment] by the Company merely indicates that [a director's] interests were aligned with the Company's interests, and is not a ground for challenging his disinterestedness." *In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 434 (S.D.N.Y. 2010); *see also In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010); *Guitierrez*, 2005 WL 2121554, at *11. Thus, Plaintiffs fail to allege that Spanos was incapable of considering a demand under the applicable standard.

### D. No Plausible Additional Reasons for Demand Futility

Plaintiffs also put forward a set of what appear to be boilerplate allegations of demand futility. Am. Comp. at ¶¶ 135–39. The Court addresses each in turn.

*First*, Plaintiffs assert that demand is excused because Six Flags's pursuit of the derivative claims would prejudice its defense of the Securities Action. *Id.* at ¶ 135. But demand is not excused where, as is the case with the Securities Action, "the Company is [a] defendant [in the related action], [but] none of [the directors] has any personal exposure in [the related] action." *Rojas v. Ellison, et al.*, 2019 WL 3408812, at *14 (Del. Ch. July 29, 2019). Here, not one of the directors is a named defendant in the Securities Action, so that action cannot provide a basis for demand futility because no director faces any potential liability in that action.

*Second*, Plaintiffs argue that the alleged misconduct is "incapable of ratification" and allege that the Board "has failed and refused to seek to recover on behalf of the Company." Am. Comp. at ¶ 137. This is not a basis to excuse demand. Plaintiffs concede they never asked the Board to assert these claims for Six Flags, so they cannot claim that the Board refused to do so. *Id.* at ¶ 118. Moreover, the fact that the Board has not yet initiated its own suit is irrelevant. *Richardson v. Graves*, No. 6617, 1983 WL 21109, at *3 (Del. Ch. June 17, 1983). Indeed, a "plaintiff who hurries to file a *Caremark* claim after the announcement of a corporate trauma behaves *contrary* to the interests of the corporation . . . ." *Baker*, 62 A.3d at 24 (emphasis added).

*Third*, Plaintiffs baldly assert that Owens, Luther, and Ruchim are conflicted considering their service on the Compensation Committee. Am. Comp. at ¶ 138. However,

17

the alleged ability to set director compensation, on its own, is not a basis to excuse demand. *See e.g., In re Adolor Corp. Deriv. Litig.*, No. 04-3649, 2009 WL 1325738, at *7 (E.D. Pa. May 12, 2009) ("If the decision to pay directors [or] the receipt of compensation, were enough to create a disabling interest, demand would almost always be futile. This simply is not the law.").

Considering the above, it is apparent that Plaintiffs did not plead that any director was incapable of disinterested demand consideration under Rule 23.1's heightened standard. Thus, the Court finds that the Complaint should be and hereby is **DISMISSED with prejudice.**

## CONCLUSION

For the foregoing reasons, the Court finds that Six Flags's Motion to Dismiss should be and hereby is **GRANTED.** ECF No. 46. Consequently, Plaintiffs' claims are **DISMISSED with prejudice** and their request for leave to amend is **DENIED.**

**SO ORDERED** on this **28th day** of **April, 2021.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE